UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:23-cr-00387 |
| Plaintiffs, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| MARCUS COLEMAN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is defendant Marcus Coleman's motion to dismiss the single-count indictment charging him with being a felon in possession of a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1). Coleman's motion asserts that Section 922(g)(1) violates the Second Amendment and is unconstitutional. (Doc. No. 15.) This motion has been fully briefed. (Doc. Nos. 16, 18.) For the reasons stated herein, Coleman's motion is DENIED.

**I.    Background**

On July 25, 2023, a federal grand jury in the Northern District of Ohio returned a one-count indictment charging Coleman with being a felon in possession of a firearm and ammunition in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8). (Doc. No. 1.) The Indictment identified two qualifying felony convictions: Felon in Possession of a Firearm and Ammunition (Northern District of Ohio Case No. 5:16-cr-00266) and Robbery (Portage County Court of Common Pleas Case No. 2013CR00261). (*Id.*) The firearm at issue

was a SCCY, model CPX2, 9mm caliber pistol, serial number C055440.  (*Id.*)

## II. Law and Analysis

### A. Motion to Dismiss

Coleman moves to dismiss his indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).  (Doc. No. 15 at PageID 57.)  Federal Rule of Criminal Procedure 12(b)(3)(B)(v) provides that a defendant can move to dismiss an indictment for failing to state an offense.  An indictment properly charges a criminal offense if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  When evaluating the content of an indictment, the allegations in it are taken as true.  *United States v. Palma*, 58 F.4th 246, 250 (6th Cir. 2023); *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019).

### B. Recent Second Amendment Jurisprudence

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

In *Heller*, the Supreme Court held that the Second Amendment confers a right on "law-abiding, responsible citizens to use arms in defense of hearth and home" regardless of militia service.  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).  Notably, the Supreme Court also stated:

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

> We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.

*Id*. at 626-27 and n. 26.

Shortly after *Heller*, the Supreme Court issued another decision reinforcing the Second Amendment's limitations, especially where felons and non-law-abiding citizens are concerned. In *McDonald v. City of Chicago*, the Supreme Court held that the right to possess handguns for self-defense was protected by the Second Amendment. 561 U.S. 742. A plurality of the Court found that this right applies equally to the states. *Id.* at 791. And like in *Heller*, the principal opinion in *McDonald* pointedly stated that the Second Amendment did not preclude prohibitions on felons possessing firearms:

> It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill . . . . We repeat those assurances here.

*Id.* at 786 (citations and quotations omitted).

In the years after *Heller* and *McDonald*, but before the Supreme Court's decision in *Bruen*, which will be discussed below, the Sixth Circuit similarly stated that "'prohibitions on felons in possession of firearms do not violate the Second Amendment' and 'Congress's prohibition on felons possessing firearms is constitutional.'" *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir 2010) (quoting *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010)); *see also United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *3 (6th Cir. 2022); *Stimmel v. Sessions*, 879 F.3d 198, 212 (6th Cir. 2018); *United States v. Swaggerty*, No. 16-6677, 2017 WL 11622737, at *1 (6th Cir. 2017); *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012).

In *Greeno*, the Sixth Circuit recognized that the core right of law-abiding, responsible citizens to use arms in defense of hearth and home is not unlimited. 679 F.3d at 517 (quotation marks omitted) (quoting *Heller*, 554 U.S. at 626, 635). But because there needed to be a "sound approach" to resolving such claims, the Sixth Circuit adopted the two-prong approach used by the Third, Seventh, and Tenth Circuits. *Id.* at 518 (discussing *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *Ezell v. City of Chicago*, 651 F.3d 684, 701-03 (7th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010)).

Under the first prong, the court determined if the law at issue "burden[ed] conduct that [fell] within the scope of the Second Amendment right, as historically understood." *Id.* If the answer was no, the analysis ended because "the regulated activity [was] categorically unprotected, and the law [was] not subject to further Second Amendment review." *Id.* (citations and quotations omitted). But if the issue was unresolved, either because history did not make it clear or if the conduct was historically understood to be subject to the right the Second Amendment sought to protect, "then there [was] a second inquiry into the strength of the government's justification for [its restriction or regulation and,] . . . appl[ying] the appropriate level of scrutiny," to determine if the government met its burden. *Id.* (citations and quotations omitted). If yes, the law was constitutional. *Id.*

Then, in 2022, the Supreme Court issued its decision in *New York States Rifle & Pistol Assoc., Inc. v. Bruen*, invalidating the state licensing scheme for carrying handguns in public places. 142 S.Ct. 2111, 2156 (2022). The Supreme Court concluded that the two-prong approach utilized by many circuits was "one[-prong] too many" and articulated the following standard for determining whether a firearm regulation offends the Second Amendment:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the

> government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126-27. When assessing present day firearms regulations, the historical analysis that courts must undertake "will often involve reasoning by analogy." *Id.* at 2132. To that end, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133 (emphasis in original). !!!

### C. Coleman's Motion

To Coleman, Section 922(g)(1) lacks an historical analogue and therefore cannot survive *Bruen*'s "text-and-history" framework. (*See* Doc. No. 15 at PageID 60-63; Doc No. 18 at PageID 110-11.) The Supreme Court, however, has already settled that the necessary historical precedent exists to conclude that felon disarmament statutes are constitutionally valid. *Heller*, 554 U.S. at 626-27; *McDonald*, 561 U.S. at 786; *see also New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1540-41 (2020) (Alito J., dissenting joined by Gorsuch & Thomas, JJ); *Bruen*, 142 S.Ct. at 2162 (Kavanaugh J., concurring joined by Roberts, C.J.).[1]

Coleman acknowledges this Court's prior denial of a similar challenge to Section 922(g)(1) and asks this Court to consider persuasive decisions rendered since its previous

---

[1] The Court recognizes that *United States v. Prince*, No. 22 CR 240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023), which was cited in Coleman's reply, views Section 922(g)(1)'s constitutionality differently. The Court is not persuaded.

opinion.  (Doc. No. 15 at PageID 63 (citing *United States v. Miller*, No. 1:22-cr-645, 2023 WL 6065116 (N.D. Ohio Sept. 18, 2023)).)  In *Miller*, this Court found a strong historical tradition of categorically disarming felons – especially those believed to be dangerous due to prior robbery and burglary convictions – and recognized the binding authority of Supreme Court decisions leaving no doubt as to the validity of "longstanding prohibitions on the possession of firearms by felons."  *Miller*, 2023 WL 6065116, at *3 (quoting *Bruen*, 142 S.Ct. at 2162).

A vast majority of courts, including others in this circuit, have similarly "concluded that the ruling in *Bruen* did not overturn, re-write, or alter the Supreme Court's prior determinations that restrictions on the right of convicted felons to possess weapons are constitutional."  *United States v. Brown*, No. 1:22-cr-704, 2023 WL 7323335, at *2 (N.D. Ohio Nov. 7, 2023) (quotation marks omitted); *See also, e.g*, *United States v. Haywood*, No. 22-20417, 2023 WL 3669333, at *1-2 (E.D. Mich. May 25, 2023) (citing *Heller*, 554 U.S. at 625-26 and collecting lower court cases); *United States v. Taylor*, No. 1:23-cr-289, 2023 WL 5957107, at *3 (N.D. Ohio Sept. 12, 2023) (denying motion to dismiss indictment charging violation of § 922(g)(1) premised on *Bruen*); *United States v. Bluer*, No. 22-cr-20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023) (recognizing the "overwhelming consensus" that "*Bruen* is no barrier to a § 922(g)(1) prosecution"); *United States v. Davis*, No. 5:19-cr-159, 2023 WL 373172, at *2 (E.D. Ky. Jan. 24, 2023) ("*Bruen* did nothing to change the prohibition on the possession of firearms by felons, which remains well-settled law." (collecting cases)).

Nevertheless, the Court has reviewed the cases Coleman describes as persuasive authority.  *United States v. Levasseur*, No. 1:22-CR-00155-LEW, 2023 WL 6623165 (D. Me. Oct. 11, 2023), *United States v. Johnson*, No. 18 CR 00458, 2023 WL 6690388 (N.D. Ill. Oct. 12, 2023), and *United States v. Coleman*, No. 3:22CR87 (DJN), 2023 WL 6690935 (E.D. Va.

Oct. 12, 2023). Each of those courts agreed that Section 922(g)(1) violates the Second Amendment *only if* it does not pass the *Bruen* history and tradition test. *Levasseur*, 2023 WL 6623165, at *5; *Johnson*, 2023 WL 6690388, at *4; *Coleman*, 2023 WL 6690935, at *11. Unlike what Coleman urges here, *Johnson* and *Coleman* determined that all Section 922(g) charges – regardless of the nature of the underlying felony – comply with *Bruen*. *Johnson*, 2023 WL 6690388, at *8 (rejecting facial and as-applied challenge to Section 922(g)(1) because history supports categorical bans based on membership to a dangerous or untrustworthy group); *Coleman*, 2023 WL 6690935, at *14-15 (holding that Section 922(g)(1) remains constitutional as to violent and non-violent felons alike).

In *Levasseur*, the court rejected the categorial approach to prior felony convictions and determined that our nation's history supported disarming only those felons whose prior convictions evidenced dangerousness. 2023 WL 6623165, at *6, 8.[2] The court concluded that the defendant's prior drug possession offense supported a finding of dangerousness, and the as-applied challenge in *Levasseur* failed. *Id.* at *9.

Here, one of Coleman's prior convictions is for robbery, which necessarily involves proof that he possessed a deadly weapon, inflicted or attempted to inflict harm, or threatened the use of immediate force in the taking or attempted taking of another's property or fleeing immediately after the theft or attempt. *See* Ohio Rev. Code § 2911.02. Such a conviction involves dangerousness. Thus, even if this Court rejected the categorical approach, which it does not,

---

[2] In reaching this conclusion, *Levasseur* relied on the Third Circuit's decision in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023). The *Range* decision concluded that a felon cannot be stripped of the right to possess a firearm without an individualized "showing that our Republic has a longstanding history and tradition of depriving people like [the defendant] of their firearms." *Id.* at 106. At least one district court in the Third Circuit has dismissed a felon-in-possession charge after the government failed to make the necessary individualized showing. *United States v. Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at *9 (M.D. Pa. Aug. 22, 2023).

Coleman's challenge would still fail because his prior conviction for robbery certainly evidences dangerousness.

In summary, the *Bruen* decision, like the decisions in *Heller* and *McDonald*, recognized that the "right secured by the Second Amendment is not unlimited." *Bruen*, 142 S.Ct. at 2128 (quoting *Heller*, 554 U.S. at 626). This Court is bound by Supreme Court and Sixth Circuit precedent concluding that "longstanding regulatory measures and prohibitions on the possession of firearms by felons . . . " are valid and constitutional. *Heller*, 554 U.S. at 626

### III.  Conclusion

For the reasons set forth above, Coleman's motion to dismiss the indictment is DENIED.

**IT IS SO ORDERED.**

**Date**: November 15, 2023

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE